IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN D. LISLE, JR., #R40159, <br><br> Plaintiff, <br><br> v. <br><br> FRANK EOVALDI, <br> TONYA SMITH, <br> RICHARD HARRIS, <br> MICHAEL LAMINAK, <br> CHRISTOPHER MCCLURE, <br> BRANDON ANTHONY, <br> TRACY HARRINGTON, <br> VIRGIL SMITH, <br> JOHN TROST, and <br> SYLVIA BUTLER, <br><br> Defendants. | Case No. 16-cv-00422-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion for Summary Judgment filed by Defendant John Trost (Doc. 119) and a Motion for Summary Judgment filed by Defendants Sylvia Butler, Richard Harris, Frank Eovaldi, Christopher McClure, Michael Laminak, Brandon Anthony, Tracy Harrington, Virgil Smith, and Tonya Smith (Doc. 126). For the reasons set forth below, the Court grants in part and denies in part both motions.

### BACKGROUND

Lisle, an inmate in the Illinois Department of Corrections, filed this action under 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred at Menard Correctional Center ("Menard"). (Doc. 61). On June 17, 2015, Lisle attempted suicide by swallowing a razor blade. According to the Amended Complaint, despite obvious dangers and risks of internal bleeding, Defendants failed to provide Lisle with any medical care.

(Doc. 61, p. 1). After swallowing the razor blade, he was strip searched and left bleeding from the mouth in a cell overnight. When he was transferred to the infirmary, he was only placed under observation. (*Id.*). Although he was x-rayed three times, no care or treatment was offered for seven days. (*Id.* at p. 1-2). While the blade was still inside him, he was released and transferred to segregation without any medical observation or access to immediate care, and left to pass the razor blade. (*Id.* at p. 2). Lisle is proceeding with one Eighth Amendment claim of deliberate indifference for failure to provide adequate medical care against all Defendants.

**RELEVANT FACTS**

Inmates at Menard are issued a razor for shaving at the beginning of the designated shower time. (Doc. 127-7, p. 9; Doc. 127-1, p. 8; Doc. 127-3, p. 16). On June 17, 2015, Lisle was escorted to the shower area and issued a razor for shaving by Correctional Officer Bennett. (Doc. 127, p. 2). During his shower, while alone, he broke apart the razor and swallowed the razor head. (Doc. 127-1, p. 8; 127-2, p. 34). He then told Officer Bennett, who called Sergeant Harris. (Doc. 127-1, p. 9). To ensure that he did not still have the razor head hidden, Sergeant Harris conducted a strip search of Lisle, and Officer Bennet searched his clothes. (Doc. 127-4, p. 8-9; Doc. 127-3, p. 24; Doc. 127-1, p. 9). Lisle was taken to a holding area and evaluated by Nurse Smith who took Lisle's vitals, including blood pressure, and listened to his belly. (Doc. 127-1, p. 9; Doc. 127-2, p. 35-36; Doc. 127, p. 4). Lisle was then placed in a suicide watch cell for the night. (Doc. 127-1, p. 10; Doc. 127-4, p. 10).

The following day, Lisle was taken to the infirmary, and an x-ray was taken. (Doc. 127, p. 5; Doc. 127-1, p. 10; Doc. 127-2, p. 37). He remained in the infirmary for a week. (Doc. 127-2, p. 32). While there, two more x-rays were taken. (Doc. 61, p. 7-8; Doc. 127-1, p. 27). On June 24, 2015, Lisle was given milk of magnesia, and he was discharged from to the cell house the

next day on June 25, 2015. (Doc. 127-2 pp. 23, 25, 32). While on suicide watch, Lisle asked Officer Virgil Smith for additional medical treatment, and Officer Smith said no. (Doc. 127, p. 8; Doc. 127-2, p. 39). On June 26, 2015, Lisle passed the razor and gave it to a correctional officer. (Doc. 127-2, p. 33). He has not received any treatment for his rectum or for damage to his intestinal tract. (Doc. 120, p. 5; Doc. 127-2, p. 39).

## LEGAL STANDARDS

### I. *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs motions for summary judgment. "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012) (quoting FED. R. CIV. P. 56(a)). *Accord Archdiocese of Milwaukee v. Doe,* 743 F.3d 1101, 1105 (7th Cir. 2014). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterpr., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014).

In assessing a summary judgment motion, a district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

### II. *Eighth Amendment Deliberate Indifference*

The Eighth Amendment prohibits cruel and unusual punishment and deliberate

indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) (citation omitted). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

In order to prevail on a claim of deliberate indifference, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011). The first consideration is whether the prisoner has an "objectively serious medical condition." *Id*. Accord *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Hammond v. Rector*, 123 F. Supp. 3d 1076, 1084 (S.D. Ill. 2015) (quoting *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014)). It is not necessary for such a medical condition to "be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a *substantial* risk of serious harm") (internal quotation marks omitted) (emphasis added).

The second consideration requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Id*. at 653. A plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). "Something more than negligence or even malpractice is required" to prove deliberate indifference. *Pyles*, 771 F.3d at 409. Deliberate

indifference involves "intentional or reckless conduct, not mere negligence." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citing *Gayton*, 593 F.3d at 620).

Assessing the subjective prong is more difficult in cases alleging inadequate care as opposed to a lack of care. Without more, a "mistake in professional judgment cannot be deliberate indifference." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016). The Seventh Circuit has explained:

> By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment. A doctor who claims to have exercised professional judgment is effectively asserting that he lacked a sufficiently culpable mental state, and if no reasonable jury could discredit that claim, the doctor is entitled to summary judgment.

*Id.* (quoting *Zaya v. Sood*, 836 F.3d 800, 805-06 (7th Cir. 2016)). This is in contrast to a case "where evidence exists that the defendant[ ] knew better than to make the medical decision [ ] that [he] did[.]" *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 731 (7th Cir. 2016)) (alterations in original). A medical professional's choice of an easier, less efficacious treatment can rise to the level of violating the Eighth Amendment, however, where the treatment is known to be ineffective but is chosen anyway. *Berry*, 604 F.3d at 441.

## ANALYSIS

### I. *Deliberate Indifference Claim Against Dr. John Trost*

Dr. Trost does not contest that Lisle suffered from a serious medical condition but instead argues that Lisle has not demonstrated that he acted with deliberate indifference by failing to establish that he had the requisite state of mind by "intentionally or recklessly disregard[ing] the plaintiff's needs." (Doc. 120, p. 15) (quoting *Holloway v. Delaware Cty. Sheriff,* 700 F.3d 1063, 1073 (7th Cir. 2012)). Dr. Trost argues that Lisle's complaints that he was not sent to an outside facility and prescribed pain medication are disagreements with

the standard of care and Dr. Trost's medical judgment, not evidence of deliberate indifference.

As a doctor trained and experienced as a general surgeon, Dr. Trost states that he treated Lisle within the standard of care applicable to someone who ingests a foreign body. (*Id.* at p. 16). When an inmate swallows a foreign body, the standard of care is to allow the object to "pass through the gastrointestinal system naturally as the associated risks are lower than those of surgery…and to monitor while the foreign body passes by vitals and serial radiographs." (*Id.*). Dr. Trost ordered abdominal x-rays on June 17, 2015, June 22, 2015, and June 25, 2015. (*Id.* at p. 18). Because the x-rays indicated that the razor had passed through the esophagus and there was no further indication of bleeding or a mechanical obstruction, he determined there was no clinical indication to refer Lisle to an outside facility for treatment. (*Id.* at p. 17).

Dr. Trost further argues that, although Lisle claims he should have received pain medication, there is no written documentation of complaints of pain, and, other than lacerations to Lisle's mouth from ingesting the razor, Dr. Trost was never verbally notified that Lisle was experiencing pain. (*Id.*). Because pain medications (1) slow or halt gastrointestinal processes, which can result in complications such as bleeding; and (2) can mask abdominal pain, which would indicate internal bleeding, he states that they are not clinically warranted or indicated for the ingestion of foreign bodies. (*Id.* at p. 16).

Dr. Trost contends that he prescribed the milk of magnesia when Lisle's constipation was reported on June 24, 2015. (*Id.* at p. 18). Lisle did not report blood in his stool on June 18, 2015, or June 21, 2015, and he passed the razor without complications or complaints of pain. (*Id.* at pp. 14, 19). Although Lisle claims he experienced rectal bleeding, there is nothing in the medical records recording that there was bleeding as a result of passing the razor. (*Id.* at

pp. 8, 11).

Finally, Dr. Trost claims that he discharged Lisle from the infirmary while the razor head was still in Lisle, because, based on his medical judgment, the razor would naturally pass "in close proximity to his discharge[.]" (*Id.* at p. 20). Again, Dr. Trost did not see any signs of obstruction, internal or external bleeding, or injury and did not deviate from the standard of care in discharging Lisle from the infirmary.

In response, Lisle does not dispute Dr. Trost's arguments that he is entitled to judgment as a matter of law because there is insufficient medical evidence to suggest Dr. Trost's care and treatment rose to the level of deliberate indifference. Lisle argues, more specifically, that Dr. Trost acted with deliberate indifference when he discharged him from the infirmary with a harmful object still inside him knowing that Lisle was suicidal and diagnosed as mentally ill. (Doc. 130, p. 1). In his reply brief, Dr. Trost states that Lisle is barred from raising this new claim of deliberate indifference in the response his motion for summary judgment. (Doc. 133, p. 2).

First, the Court agrees that Lisle's argument raised in his Response in Opposition is a new theory of liability not described in the operative complaint. In the Second Amended Complaint, Lisle alleges that Dr. Trost failed to provide adequate medical care for his "medical emergency" and did not offer him treatment options for passing the razor. (Doc. 61, p. 9). Lisle claims he was discharged from the infirmary without any regular medical observation (*Id.* at p. 2), but there is nothing in the Second Amended Complaint putting Dr. Trost on notice that the Eighth Amendment claim against him is based on discharging Lisle knowing that he was a high risk to inflict self-harm with the razor. Because "a plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment[,]" the Court will not consider these arguments. *Grayson v. O'Neill*, 308

F.3d 808, 817 (7th Cir. 2002) (quoting *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996)).

Furthermore, Lisle has not produced any evidence to suggest that Dr. Trost's determination to treat him through observation in the infirmary by taking his vitals and a series of x-rays or to discharge him from the infirmary to pass the razor naturally was a substantial departure from accepted professional judgment or the standard of care for the ingestion of foreign objects. *See Whiting,* 839 F.3d at 663 (holding that "no evidence in this case support an inference that [the defendant doctor] 'knew better' than to pursue the course of treatment that he did."). As such, summary judgment is appropriate to Lisle's claim that Dr. Trost acted with deliberate indifference in denying him medical treatment for the razor in his abdomen.

The Court still finds, however, that a genuine issue of material fact exists regarding whether Dr. Trost was deliberately indifferent to the pain Lisle experienced. Chronic pain may constitute an objectively serious medical condition. *See Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011) (treating a hernia and chronic pain it caused as separate medical conditions). Dr. Trost argues that there is no written documentation, including in the medical records, that Lisle complained of pain. (Doc. 120, p. 6-9). He states that "when treating an inmate who has swallowed a razor and *is not* complaining of pain, the standard of care is to not prescribe pain medication[.]" (*Id.* at p. 9) (emphasis added). Lisle claims in his Second Amended Complaint and in his depositions, however, that he continued to experience "extreme" pain during the week he was in the infirmary. (Doc. 61, p. 7). He alleges that he repeatedly informed medical staff that he was in pain, even though it is not recorded in the medical records. (Doc. 127-2, p. 17). In his depositions, Lisle states that Dr. Trost did not actually physically examine him and that he personally told Dr. Trost that he needed pain medication and his "insides felt like they [were] burning," but that Dr. Trost did not provide

any medication. (Doc. 127-1, pp. 4, 27; Doc. 127-2, pp. 16, 25).

When deciding summary judgment, the Court will not make credibility determinations. *See Townsend v. Fuchs*, 522 F.3d 765, 774 (7th Cir. 2008). Although Lisle's allegations that he suffered continual pain is not supported by the medical records, it is possible that the observations written down by medical staff in the medical records are inaccurate as Lisle insists. (*See* Doc. 127-2, p. 29). "A reasonable trier of fact could just as easily accept" Lisle's assertions that medical staff omitted information or wrote down the wrong information, as it could accept that the medical records and Dr. Trost's assertions are accurate. "Where the parties present two vastly different stories—as they do here—it is almost certain that there are genuine issues of material fact in dispute." *Washington v. Haupert*, 481 F.3d 543, 550 (7 Cir. 2007) (quoting *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). As the accuracy of the medical records has been called into question, Dr. Trost is not entitled to summary judgment on the issue of whether he was deliberately indifferent in treating Lisle's pain.

Finally, Dr. Trost argues that Lisle has not presented any medical evidence that Lisle "suffered a delay or denial of medical care." (Doc. 120, p. 13). In cases "where the plaintiff alleges the defendant delayed, rather than denied, medical treatment, [the Seventh Circuit has] required that the plaintiff present verifying medical evidence that the delay, and not the underlying condition, caused some harm." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019) (internal citations omitted). In this case, however, Lisle does not argue that Dr. Trost delayed his medical treatment, but that he was denied treatment altogether. Accordingly, Lisle is not required to present verifying medical evidence.

**II.** *Deliberate Indifference claim against Sylvia Butler, Richard Harris, Frank Eovaldi, Christopher McClure, Michael Laminak, Brandon Anthony, Tracy Harrington, Virgil Smith, and Tonya Smith*

First, Defendants collectively contend that Lisle did not suffer from a serious medical condition by ingesting the razor. (Doc. 127, p. 11). Contrary to Lisle's allegations, staff never noted any complaints of pain or distress made by Lisle during his time in the infirmary, and the razor passed with no complications. They argue there is no evidence that Lisle actually faced a substantial risk of serious harm in this case. (*Id.*).

It is undisputed that within an hour of swallowing the razor head, Lisle was seen by Nurse Smith and Dr. Trost was called. (Doc. 127-8, pp. 5, 7; Doc. 127-2, p. 36). The next day an x-ray was taken, and Lisle remained in the infirmary for a week under observation for complications, such as internal bleeding and obstruction. (Doc. 127-2, p. 37; Doc. 120, p. 6). Lisle claims that after ingesting the razor he was bleeding and coughing up blood and that while in the infirmary he experienced severe pain. (Doc. 127-2, p. 37). Furthermore, the Seventh Circuit has held that "the risk of suicide is an objectively serious medical condition[.]" *Lisle v. Welborn,* 93 F.3d 705, 716 (7th Cir. 2019). Given the factual allegations and Lisle's history of self-harm (Doc. 127, p. 2), the Court finds a reasonable jury could find that Lisle had a serious medical condition. *See Hayes,* 546 F.3d at 522-23 (an objectively serious medical condition includes "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment.") (quoting *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997)).

**a.  Dr. Sylvia Butler**

Dr. Butler argues that she was not deliberately indifferent by discharging Lisle from the infirmary. Dr. Butler states that she is employed as a mental health professional at Menard, not a medical doctor. (Doc. 127, p. 5). At the time of the allegations, she was the crisis

team leader and supervisor of mental health. (*Id.*). Dr. Butler relies on the medical doctor for medical diagnosis and medical information. She contends that because Dr. Trost determined that discharge was appropriate medically, she agreed to have Lisle return to a crisis cell, where he was prior to entry in the infirmary. (*Id.* at p. 7). In the crisis cell, Lisle continued to be kept on watch and seen by mental health staff. (*Id.* at p. 13).

In his response, Lisle argues that Dr. Butler stated in her deposition that she would not have been comfortable authorizing a patient on crisis watch released to "segregation" knowing that the patient still had a razor in his rectum. (Doc. 144, p. 5; Doc. 144-2, p. 21). He states that, based on the medical records, Dr. Butler knew Lisle had not passed the razor on the day he was discharged and was deliberately indifferent by sending him back to a cell to be alone with a dangerous object still in his body that could be used for self-harm once passed. (Doc. 144, p. 8). In his deposition, Lisle states he was placed back in segregation, denying him medical attention. (Doc. 127-2, p. 28).

The Court finds that Dr. Butler is entitled to summary judgment. Lisle may have been discharged to a cell alone, but Dr. Butler stated in her deposition that she discharged him to a crisis cell, not to segregation, and that she never took him off of crisis watch even though he was discharged from the infirmary. (Doc. 144-2, pp. 18, 29, 31). She further stated that the 30 minute suicide watch in the infirmary is not different than the 30 minute suicide watch in north two cell house, and so the risk of him harming himself after he passed the razor would have been the same. (*Id.* at p. 28-29). It is unclear whether Lisle was actually placed in a segregation cell or a crisis cell following discharge from the infirmary, as both are located in north two cell house (*see* Doc. 144-2, p. 31),[1] but regardless, Lisle does not dispute that Dr. Butler discharged him with the instructions that he continue to be watched and that he

---

[1] At times in his deposition Lisle states that he was returned to segregation after being discharged from the infirmary, but he also states that he was placed on suicide watch. (Doc. 127-2, pp. 27, 39).

continued to be seen by mental health staff. Although she stated that she would not have been "comfortable" discharging Lisle from the infirmary with a razor still in his body because she thought that "medically, [Lisle] should be followed," (Doc. 144, p. 8; Doc. 144-2, p. 21), she also repeatedly stated that she is not involved in the discharge of a patient regarding his medical status. (Doc. 144-2, p. 29). Lisle even acknowledges that "Dr. Butler was responsible for authorizing Lisle's discharge from the infirmary from a 'mental health' perspective, while Dr. Trost was responsible for authorizing Lisle's discharge from a 'medical' perspective." (Doc. 144, p. 5). Lisle has not presented any evidence that Dr. Butler disregarded his mental health condition or an excessive risk to his safety by discharging him from the infirmary to be continually monitored in the cell house by mental health. "[A] medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Roe v. Elyea,* 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Sain v. Wood,* 512 F.3d 886, 894-95 (7th Cir. 2008)). As such, Dr. Butler's request for summary judgment will be granted.

b.  **Richard Harris, Frank Eovaldi, Christopher McClure, Michael Laminak, Brandon Anthony, Tracy Harrington, Virgil Smith, and Tonya Smith**

Defendants Harris, Eovaldi, McClure, Laminak, Anthony, Harrington, Officer Smith, and Nurse Smith argue that Lisle has not presented evidence that they had a culpable state of mind. (Doc. 127, p. 12). Sergeant Harris was the first to arrive to the showers after being contacted by Officer Bennet. He strip searched Lisle to ensure he was not concealing the razor. Harris advised Lieutenant Eovaldi and medical staff. (*Id.* at p. 3). There is no evidence that Eovaldi even came to the scene. (*Id.* at p. 12). Lisle was then evaluated by Nurse Smith in the cell house. (*Id.* at p. 13). She took his vitals, listened to his bowel sounds, and noted no complaints of pain in his medical chart. Nurse Smith claims she called Dr. Trost and received orders that Lisle could stay in the cell house and that he would be x-rayed in the morning.

(*Id.* at p. 12-13). Nurse Smith also contacted mental health. Lisle was taken to a closed evaluation cell in north two cell house and was placed on crisis watch where he was seen by someone every 30 minutes. (*Id.* at p. 4-5). Officer Anthony does not remember receiving a complaint from Lisle that night. He states that if he had heard a complaint of pain, he would have notified healthcare. (*Id.* at p. 5). Furthermore, Defendants state that even if Lisle had complained during the night to Officer Laminak, Officer McClure, or Sergeant Anthony regarding his condition, Lisle was already receiving treatment, as he had been evaluated by healthcare and an x-ray was scheduled. (*Id.* at p. 13). Likewise, at the time that Lisle alleges he complained to Correctional Officer Virgil Smith, he had just been discharged from the infirmary and was being monitored by mental health. (*Id.* at p. 14). Because non-medical staff should be able to rely on the medical staff in treating inmates, none of the Defendants acted with deliberate indifference or any culpable state of mind. Furthermore, nothing in the record indicates that Lisle was bleeding or in pain prior to being taken to the infirmary.

In response, Lisle argues that the evidence shows that Defendants turned a "blind eye" by not providing prompt medical care. He was not immediately rushed to the infirmary, but instead placed in a holding cell waiting while Sergeant Harris notified his superior. Although Lieutenant Eovaldi states he did not come to the scene, Lisle claims that Eovaldi was there and berated him and instructed others to not provide him medical assistance. (Doc. 144, p. 3; Doc. 127-1, p. 10). Following Eovaldi's directive, Lisle claims (1) Nurse Smith only checked his vitals and failed to adequately treat him while he was in the infirmary; (2) Anthony, McClure, and Harris did not assist Lisle in the night when he complained of pain; and (3) Sergeant Harrington took steps to remove him from the infirmary. (Doc. 144, p. 4; Doc. 127-2, p. 39).

Even if Lisle demonstrates deliberate indifference, as previously mentioned, the

Seventh Circuit requires that to succeed on a claim of delayed treatment, a plaintiff must provide "verifying medical evidence that the delay (rather than the inmate's underlying condition) caused some degree of harm." *Conley v. Birch,* 796 F.3d 742, 749 (7th Cir. 2015) (quoting *Jackson v. Pollion,* 773 F.3d 786, 790 (7th Cir. 2013). "That is, a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Williams v. Liefer,* 491 F.3d 710, 714-15 (7th Cir. 2007). Although Lisle claims that he was denied prompt medical treatment and not immediately taken to the infirmary despite complaining of pain and spitting up blood after ingesting the razor head (Doc. 144, p. 3-4), he has not provided any verifying medical evidence that would permit a jury to find that the delay in his medical treatment was detrimental. Because Lisle's "own testimony that he experienced untreated symptoms during the delay does not qualify as verifying medical evidence[,]" *Johnson v. Obaisi,* No. 16-cv-4046, 2020 WL 433872, at *7 (N.D. Ill. Jan. 28, 2020), the motion for summary judgment regarding Lisle's claim of delayed medical treatment against Harris, Eovaldi, McClure, Laminak, Anthony, and Nurse Smith is granted.

The Court also grants Sergeant Harrington's motion for summary judgment. Lisle claims that "Sergeant Harrington asked Dr. Butler to sign off on removing Mr. Lisle from the infirmary [and] Dr. Butler agreed." (Doc. 61, p. 8). He also states that at the request of Lieutenant Eovaldi, Sergeant Harrington "took affirmative steps to remove Lisle from the infirmary while he was still suffering from a serious medical condition[,]" and "tried to remove Lisle from the infirmary," in an effort to eliminate the limited medical care that Lisle was receiving. (*Id.* at pp. 4, 11). Even assuming that Harrington advocated for the discharge of Lisle from the infirmary by talking to Dr. Butler, this does not demonstrate deliberate indifference regarding Lisle's medical care for ingesting the razor. Dr. Butler discharged Lisle with instructions that he continue to be monitored under crisis watch in the same manner he

was monitored within the infirmary, and it was Dr. Trost who made the determination to discharge him from the infirmary before he passed the razor. (Doc. 120, p. 7; Doc. 61, p. 5). "[T]o be liable under [Section] 1983, an individual must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park,* 430 F.3d 805, 810 (7th Cir. 2005) (citations omitted). Because there is no underlying constitutional violation by Dr. Butler of Dr. Trost for discharging Lisle, the factual allegations do not support an Eighth Amendment claim against Harrington for deliberate indifference to Lisle's serious medical need by speaking to Dr. Butler regarding his discharge.

There is a genuine issue of material fact, however, regarding whether Officer Virgil Smith was deliberately indifferent to Lisle's serious medical need after he was discharged from the infirmary. "A prisoner states an Eighth Amendment claim against nonmedical prison officials if he alleges that they recklessly disregarded a substantial risk of serious pain to the prisoner." *Bentz v. Ghosh,* 718 F. App'x 413, 419 (7th Cir. 2017) (citing *Gomez v. Randle,* 680 F.3d 859, 865-66 (7th Cir. 2012)). Lisle claims that Officer Smith denied his repeated requests for medical attention and pain medication. (Doc. 144, p. 11; Doc. 127-2, p. 39). When he did pass the razor, he alleges he experienced a torn rectum and bleeding. (Doc. 61, p. 8). Officer Smith does not refute Lisle's allegation that he refused to take him back to the infirmary but argues that there is no record that Lisle complained of pain or further injury from passing the razor. (Doc. 127, p. 14). Additionally, Officer Smith states that Lisle had just been discharged from the infirmary and was being monitored by mental health. (*Id.*).

At this stage in the litigation "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby, Inc.,* 477 U.S. at 255. Lisle does not allege that he simply asked to go to the infirmary but states in his deposition that he told Officer Smith that his stomach was hurting and burning and that he was in pain.

(Doc. 127-2, p. 39). Because the "'unnecessary and wanton infliction of pain' is proscribed by the Eighth Amendment[,]" *Walker v. Benjamin,* 293 F.3d 1030, 1040 (7th Cir. 2002) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)), Lisle's claim against Office Smith for deliberate indifference to his pain survives summary judgment.

Officer Smith further argues that he is entitled to qualified immunity as to Lisle's claims against him.[2] Qualified immunity shields "government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The qualified immunity test has two prongs: (1) whether the facts shown, taken in the light most favorable to the party asserting the injury, demonstrate that the officer's conduct violated a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct. *See Pearson, 555* U.S. at 232; *Brosseau v. Haugen,* 43 U.S. 194, 197 (2004); *Wilson v. Layne*, 526 U.S. 603, 609 (1999). "The doctrine of qualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Humphries v. Milwaukee Cty.*, 702 F.3d 1003, 1006 (7th Cir. 2012) (citations and quotation marks omitted).

The Court has already determined that there are disputes of material fact that prevent a finding that Officer Smith did not engage in a constitutional violation. Furthermore, accepting Lisle's allegations as truth, "any reasonable officer would know he had a duty to seek medication attention." *Orlowski v. Milwaukee Cty.,* 872 F.3d 417, 422 (7th Cir. 2012). For these reasons, Officer Smith is not entitled to qualified immunity.

---

[2] Because summary judgment is granted as to Defendants Dr. Butler, Harris, Eovaldi, McClure, Laminak, Anthony, Harrington, and Nurse Smith, the Court will not consider their claims of qualified immunity. (*See* Doc. 127, p. 15).

# DISPOSITION

For the reasons set forth above, the Court **GRANTS in part** and **DENIES in part** Dr. Trost's motion for summary judgment (Doc. 119)**.** Dr. Trost's motion is granted as to Lisle's claim that he was deliberately indifferent by treating Lisle by allowing the razor head to pass naturally under observation, but is denied as to Lisle's claim of untreated pain. The Court also **GRANTS in part** and **DENIES in part** the motion for summary judgment filed by Dr. Butler, Harris, Eovaldi, McClure, Laminak, Anthony, Harrington, Officer Smith, and Nurse Smith (Doc. 127). The motion is denied as to Lisle's claim of deliberate indifference against Officer Smith, but is granted as to Lisle's claims of deliberate indifference against Dr. Butler, Harris, Eovaldi, McClure, Laminak, Anthony, Harrington, and Nurse Smith. Accordingly, the claims against Defendants Dr. Butler, Harris, Eovaldi, McClure, Laminak, Anthony, Harrington, and Nurse Smith are **DISMISSED with prejudice.** The Clerk of Court shall terminate Dr. Butler, Harris, Eovaldi, McClure, Laminak, Anthony, Harrington, and Nurse Smith as defendants and enter judgment in favor of these defendants at the conclusion of the entire action.

Lisle's claims of deliberate indifference against Defendants Dr. Trost and Officer Smith are the only claims that remain pending. A status conference will be set by separate order for the purpose of selecting firm dates for a final pretrial conference and jury trial.

**IT IS SO ORDERED.**

DATED:   March 18, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**